## Francis B. Fay *et al.*, Petitioners, &c.

Where a petition for a license to set up a ferry was presented to the mayor and aldermen of Boston, as the successors of the Court of Sessions, and upon a hearing of the parties interested, the petition was granted, it was *held*, that these proceedings were of a *judicial* nature, and therefore might be removed to this Court by *certiorari*.

But where, in a petition for a certiorari, such ferry was claimed by the proprietors of an ancient ferry as appurtenant thereto, it was *held*, that it was not competent for the Court, under this summary process, to try the conflicting titles of the parties, to such franchise.

The Court of Sessions, previously to its abolition, was authorized to establish ferries over navigable rivers and arms of the sea.

Under the *St.* 1821, *c.* 109, § 11, abolishing the Court of Sessions in the county of Suffolk, and transferring its authority, with certain exceptions, to the mayor and aldermen of Boston, the power of licensing ferries within the territorial limits of Boston, was vested in the mayor and aldermen, it not being a power in the exercise of which a trial by jury can be required, and so not within the exceptions.

If a ferry claimed by the city of Boston as owners, be leased by the city, through the agency of the mayor and aldermen, with covenants for the exclusive enjoyment of such franchise, such covenants will not restrain the mayor and aldermen from exercising the powers vested in them by statute, to license another ferry over the same waters, if it be required by the public convenience and necessity; but if the city be the owner of an exclusive franchise in the ferry, the lessees would hold it notwithstanding any license to others.

Where a petition presented to the mayor and aldermen of Boston, for a license to set up a ferry, was referred to a committee, and a report was made in favor of licensing the petitioners, and subsequently, a hearing of the persons interested was had before the whole board, and the petition was granted, it was *held*, that it was immaterial whether the report was agreed to by the committee or not.

Upon a petition for a writ of certiorari to quash the proceedings of the mayor and aldermen in licensing a ferry, it was *held*, that the Court would not review the decision of the mayor and aldermen upon the question of public convenience and necessity, the regularity of their proceedings only being open to examination under such process.

On a petition for a certiorari to quash the proceedings of the mayor and aldermen of Boston in licensing a ferry " between Noddle's Island and other parts of the city of Boston," it was *held*, that the license was not void for its generality and uncertainty, in not defining more particularly the *termini* of the ferry, and so, that the proceedings could not be set aside on this ground, on *certiorari*.

*It seems*, that a right of ferry may exist separately from the ownership of the soil at the *termini* of the ferry.

PETITION for a writ of *certiorari* to the mayor and aldermen of Boston, to bring before this Court all the records and proceedings of the mayor and aldermen, and of the town and city of Boston, relative to the Winnisimmet Ferry, and the demise of the same to the petitioners, and relative to the

Fay,
Petitioner,
&c.

petition of William H. Sumner and others, and to the licens-
ing of them to set up a new ferry from the old part of Bos-
ton to Noddle's Island.

The petitioners, who were the trustees of an unincorporated
company called the Winnisimmet Lands and Ferry Company,
set forth, that they were seised of a ferry between the shores
of Boston and Chelsea, under an ancient grant by the legis-
lature of the colony of Massachusetts Bay to Samuel Maver-
ick and his heirs and assigns ; that the city of Boston was
seised of another ferry between the same shores, established
under certain ancient acts of the legislature ; that by an in-
denture between the city of Boston and the petitioners, the
city of Boston demised to the petitioners the use and im-
provement of the ferry of which the city of Boston was
seised, for a term of years, with the right of purchasing the
same in fee upon the terms set forth in the indenture ; that
the petitioners, by virtue of the several acts of the legislature
establishing and regulating these ferries, have, as appurtenant
to these ferries, the exclusive liberty and franchise of transport-
ing passengers and goods over the waters, between the city of
Boston and Noddle's Island ; and that since the execution of
the indenture the mayor and aldermen of Boston, upon the pe-
tition of William H. Sumner and others, have granted to them
a license to set up and maintain a new ferry, with steamboats
or otherwise, between the city of Boston and Noddle's Island,
under color of the authority anciently given to the Courts of
Sessions to license ferrymen within their respective coun-
ties, as the public necessity and convenience might require.
Whereas the present petitioners say, that the mayor and al-
dermen have no authority to establish ferries ; that they have
no jurisdiction over the waters lying between the city of
Boston and Noddle's Island, the same being public navigable
waters and a great arm of the sea ; that they have no authority
to obstruct and impair the free use and enjoyment of those
waters as a common highway, by creating a ferry and estab-
lishing a toll, for passage over the waters, or to obstruct and
impede the free navigation thereof by licensing steam ferry
boats to be kept constantly passing across the common chan
nel, through which vessels are accustomed to pass ; that the

Island is uninhabited except by a single family ; that there are no roads through the island over which travellers are accustomed to pass ; that the public necessity and convenience do not require the establishment of such ferry, nor justify the licensing thereof ; that the petition of William H. Sumner and others was referred by the mayor and aldermen, to a committee consisting of two aldermen ; that no notice of the meetings or other proceedings of the committee was given to any person interested in the subject matter of that petition, except to those by whom that petition was signed ; that no hearing of parties adverse to such petition was had before the committee ; that one of the members of the committee, without the knowledge or concurrence of the other member, drew up and presented to the mayor and aldermen a paper purporting to be a report of the committee, setting forth the public convenience and necessity of the ferry, against the opinion of the other member of the committee ; that upon the remonstrance of the present petitioners, against the acceptance of that report, a hearing was had before the mayor and aldermen, at which no evidence was produced of the public necessity and convenience of the proposed ferry, other than that report ; that it did not appear by such report, that there were any inhabitants on Noddle's Island with whom communication was proposed to be had by means of the ferry, nor that there was any line of public travel passing through the island to be accommodated thereby, nor that any public convenience or necessity required the erection of the ferry ; that the mayor and aldermen nevertheless accepted the report, and ordered, that William H. Sumner and others should be licensed to set up and carry on a ferry between the island and other parts of the city of Boston, by steamboats or other boats, and to take and receive tolls, not exceeding the rates taken at the ferry between Boston and Chelsea.

The present petitioners further say, that the mayor and aldermen had no authority to license a new ferry between that island and the city of Boston, inasmuch as the city had already, by the indenture before mentioned, assigned to the present petitioners the right of ferriage upon that passage, annexed to the ancient ferry called the Winnisimmet ferry ; and

21 *

Fay,
Petitioner,
&c.

that the proceedings of the mayor and aldermen in the prem ises ought to be quashed and set aside.

March 21st.

*Dexter* and *Gardiner*, for the petitioners. Assuming ha the mayor and aldermen had general jurisdiction over the sub· ject, the only remedy for the party aggrieved by the irregu- larity of their proceedings is, by writ of *certiorari*. Even ii the petitioners, however, might have brought an action for damages, they may nevertheless seek their remedy by *certio- rari*. *Conner* v. *Paxson*, 1 Blackford, 168 ; 5 Dane's Abr. 87, 95 ; *Munro* v. *Baker*, 6 Cowen, 396 ; *Garland* v. *Burton*, Andrews, 27 ; Wellbeloved on Highways, 517, cites *The King* v. *The Justices of the West Riding of Yorkshire*, 5 T. R. 629 ; *The King* v. *The Justices of Somersetshire*, 5 Barn. & Cressw. 816 ; *West Boston Bridge* v. *County Commissioners of Middlesex*, 10 Pick. 270

But we contend, that the mayor and aldermen have no jurisdiction in relation to this ferry. A ferry over navigable water is public property, and must be granted by the legisla- ture. *St.* 1832, *c.* 108 ; *Blissett* v. *Hart*, Willes, 512, note. Hale de Jure Mar. (Hargr. ed.) 6. The mayor and alder- men have derived no authority to establish ferries from the legislature, by any express statute provision to that effect. *St.* 1821, *c.* 110 ; *St.* 1821, *c.* 109, § 11. The Court ot Sessions acquired all their authority in relation to ferries, as incidental to their powers in regard to highways ; they might have established ferries, where highways were interrupted by water not navigable ; but they were not empowered to esteblish ferries over navigable waters. If the mayor and aldermen, therefore, succeeded to the authority of the Court of Sessions in relation to ferries, their jurisdiction would not extend to the ferry in question. *St.* 1796, *c.* 42 ; Anc. Chart. 126, 268, 280, 448, 623 ; *Payne* v. *Partridge*, 1 Shower, 255 ; Well- beloved on Highways, 19, 33 ; *St.* 1832, *c.* 108. *Mass. St.* 3 Geo. 2, *c.* 5 ; *Mass. St.* 27 Geo. 2, *c.* 7 ; *Commonwealth* v. *Knowlton*, 2 Mass. R. 534 ; *Commonwealth* v. *Coombs*, 2 Mass. R. 492 ; *Commonwealth* v. *Charlestown*, 1 Pick. 180 ; *Arundel* v. *M'Culloch*, 10 Mass. R. 70. But whatever may have been the power of the Court of Sessions as to ferries in the county of Suffolk, it was transferred to the

Court of Common Pleas, a much more appropriate tribunal for deciding questions of this sort, than the mayor and aldermen. *St.* 1821, *c.* 109, § 8.

The mayor and aldermen could have no jurisdiction over this ferry as successors to the selectmen of Boston, it being a *county* highway.

But if the establishing this ferry was within the jurisdiction of the mayor and aldermen, it should appear that they had *adjudged* it to be of common convenience and necessity. *St.* 1796, *c.* 42, § 4 ; *Commonwealth* v. *Egremont*, 6 Mass. R. 491 ; *Commonwealth* v. *Chase*, 2 Mass. R. 170. In fact, the public convenience and necessity did not require this ferry, there being no line of travel to be accommodated thereby. The only pretence for the exercise of this power on the part of the mayor and aldermen is therefore wanting.

The grant was void on account of its generality and uncertainty, in not stating who are the ferrymen, and the time for which they are appointed, and in not defining more particularly the *termini* of the ferry. *Commonwealth* v. *Coombs*, 2 Mass. R. 490 ; *Hicks* v. *Fish*, 4 Mason, 310.

*Pickering* and *Aylwin*, *contrà*, to the point, that the Court could not inquire into the title of the petitioners to an exclusive franchise, under the process of *certiorari*, cited *Rex* v. *Moreley*, 2 Burr. 1040 ; *Rex* v. *Oulton*, Burr. Sett. Cas. 64 ; *Rex* v. *Preston upon the Hill*, ibid. 77 ; *The King* v. *James*, 2 Maule & Selw. 321 ; *Commonwealth* v. *Blue Hill Turnpike*, 5 Mass. R. 420 ; *Rex* v. *The Justices of Monmouthshire*, 8 Barn. & Cress. 137 ; and to the point, that the Court of Sessions had authority to establish ferries over navigable waters, they cited Anc. Chart. 281 ; *Mass. St.* 11 *Ann. c.* 3.

SHAW C. J. delivered the opinion of the Court. So far as this petition seeks to bring before the Court the records, orders and doings of the town and city of Boston, in relation to Winnisimmet ferry and the demise thereof to the petitioners or others, it is not a subject for judicial inquiry in tn.s summary form ; they are proceedings in no respect judicial , and in regard to them, and the rights of parties under them, this Court has no jurisdiction in this form to inquire or decide.

The other proceedings, in relation to the granting of a license for a ferry, are alleged to have been had before the mayor and aldermen of the city of Boston, under a clause of general jurisdiction, as successors of the late Court of Sessions, and were in the nature of judicial proceedings ; and although that body do not proceed according to the forms of a court of law, yet so far as those proceedings are judicial, they are a proper subject of examination by this Court, by certiorari. *Parks* v. *Boston*, 8 Pick. 218.

The petitioners, as well in their petition as by their evidence and argument, have set forth and apparently relied upon their alleged title to the franchise of Winnisimmet ferry, with a right to a ferry to Noddle's Island, as collateral and incident thereto, and the disturbance which the ferry complained of would occasion to the enjoyment of their franchise. But we consider it very clear, that it is not competent to the Court, in this form, to try the conflicting titles of these parties to this franchise, and that this claim of title by the petitioners is no otherwise relevant and material, than as it shows, that they may have a great though indirect interest in the subject matter, and may vindicate the propriety of their offering to show, if they can, that the proceedings by which a rival ferry was licensed, were erroneous, irregular, or had before a tribunal having no jurisdiction, and so were void and of no effect. But as it is now conceded, that the petitioners were heard before the mayor and aldermen, to remonstrate against this license and oppose it, and were thus recognised as parties to the proceedings, and as the respondents make no objection to the presentation of this petition on the ground that the petitioners are strangers or persons having no interest in the subject, the direct question of their title to the exclusive franchise of a ferry to Winnisimmet and Noddle's Island is not now before the Court, and we give no opinion respecting it.

The first question therefore is, whether the mayor and aldermen of the city of Boston had jurisdiction of the subject matter, and the power to license a ferry from one place to another, both being within the territorial limits of the city. This must depend mainly upon the construction of the statutes. It must be recollected, in construing these acts, that

the *St.* 1821, *c.* 109, regulating the administration of justice within the county of Suffolk and for other purposes, and the *St.* 1821, *c.* 110, for establishing the city of Boston, were passed on the same day, had reference to each other, by their terms were to go into operation together, and for all purposes of exposition may be considered as one statute. By *St.* 1821, *c.* 109, § 11, the Court of Sessions within the county of Suffolk is abolished, and its powers and duties are transferred to the mayor and aldermen, except as otherwise provided in that act, or the act establishing the city. The point of inquiry then is, whether prior to the passing of that act the power of licensing ferries was in the Court of Sessions for the county of Suffolk. In this inquiry it will be important to distinguish between the power of licensing ferries, and that of laying out highways.

At common law a ferry is deemed a franchise, which cannot be set up without the king's license. *Churchman* v. *Tunstal*, Hardr. 163. In this commonwealth it is regulated by statute. Though a ferry be in its nature part of a highway, yet it is in many respects distinguishable ; and from the earliest times of the colonial government, in Massachusetts, the mode of establishing ferries, and that of laying out highways, have been kept distinct. Several different acts are to be found in the colony ordinances, and several among the acts of the provincial legislature, in all of which these powers are kept entirely distinct. These different provisions were revised and the most important of them embodied and reënacted by *St.* 1796, *c.* 42, by which former acts were repealed, except so far as they affected existing rights and liabilities.

By the provisions of this act, the Court of Sessions, for each county within which a ferry may be, is empowered to license ferrymen, to fix the rate of tolls, and to require bonds of the ferrymen for the faithful performance of their duties. There was a saving clause, however, in regard to all such ferries as had been already stated and settled by the court or town to whom they appertained. Such ferrymen were made subject to certain duties and obligations, designed to promote the public accommodation. The provisions of this act do in effect secure to licensed ferrymen, whilst their license con-

tinues, an exclusive benefit in the tolls to be derived .there-from, by restraining all other persons from interfering to carry passengers for toll or hire, under suitable penalties. Such was the state of the general law, when the town of Boston was organized as a city.

By several acts passed in special reference to the peculiar situation of Boston, the whole power of laying out streets, ways and alleys, prior to its organization as a city, was vested in the selectmen of the town. But by the same acts it was provided, that any claim for damages, made by any person, for taking land or otherwise, arising from laying out or widening any street, lane or alley, might be prosecuted for and recovered in the manner pointed out .by an act of the commonwealth directing the method of laying out highways. *St.* 1799, *c*. 31. The act thus referred to was *St*. 1786, *c*. 67, by which damages were awarded by a jury ordered by the Court of Sessions, and acting under the direction of the sheriff. ‑ By a more recent act vesting in the selectmen of Boston the power of laying out and widening streets, lanes and alleys, damages to parties whose land is taken, are to be recovered by application to the Court of Sessions. *St*. 1804 *c*. 73.

From these provisions it seems‑ clear, that previously to organizing the town of Boston as a city, the power of laying out streets &c. was in the selectmen ; but that all claims for damages not settled by agreement between the claimant and the selectmen, were to be prosecuted for in the Court of Sessions, and assessed by a jury. But by no reasonable construction could the power of laying out streets, lanes and alleys, be held to include the power of establishing ferries or licensing ferrymen. That power then, not being vested in the selectmen, by force of the general act remained in the Court of Sessions, when the act passed establishing the town as a city. It follows, therefore, that by the act already cited, *St*. 1821, *c*. 109, § 11, abolishing the Court of Sessions and vesting its powers in the mayor and aldermen, this power of licensing ferrymen was transferred to that board, unless it fell within some one of the exceptions. By § 8, of the same act, it is provided, that the Court of Common Pleas in the

county of Suffolk should have all the powers which before the passing of the act were vested in and exercised by the Court of Sessions, in regard to streets and ways, and to all other suits, processes and proceedings, in which a trial by jury might be had and required.

We have already seen, that previously to this act, the power of laying out streets was in the selectmen, without any intervention of a jury ; the power of entertaining a claim for damages was in the Court of Sessions. By this distribution of powers, therefore, the former is now in the mayor and aldermen, and the latter in the Court of Common Pleas.

In like manner, as the power of licensing ferries was, before the act, in the Court of Sessions, by force of the act this power is transferred to the mayor and aldermen, unless it can be deemed a suit or process in which a trial by jury may be had or required, and we think it quite clear that it cannot be so deemed. No statute regulating the licensing of ferries, provides for a jury for any purpose, and it is not easy to perceive that by any possibility a jury can be required in the execution of any implied power embraced in the authority to license ferries. It does not authorize or require the taking land or other property. If highways are required as incident to the use of a ferry, being on land, the power to lay out highways seems the appropriate one to be resorted to. The *termini* of the ferry are at the water's edge on each side ; and if any ferry interferes with others, the remedy is at common law. But perhaps a still more decisive answer is this ; that the power to lay out highways, and the power to entertain a claim and suit for damages occasioned by such laying out, are clearly now in different bodies, the former, in the mayor and aldermen, and the latter, in the Court of Common Pleas ; and by a very obvious analogy, if the exercise of the power of licensing a ferry were to found a claim for damages on the part of any person, whose property might be taken or affected thereby, such claim would in like manner be within the jurisdiction of the Common Pleas.

The Court are therefore of opinion, that the power of licensing ferries within the city, is not one in the exercise of which a trial by jury can be had or required, that it was not

within the exceptions of the 11th section, but was by force of that section transferred to and vested in the mayor and aldermen, and so held by them, at the time the license in question was granted.

Supposing the mayor and aldermen had jurisdiction of the subject, several objections are taken to the regularity, correctness and legal effect of the proceedings.

1. The first is, that the grant of this license was contrary to the terms or to the spirit and legal effect of the lease of Winnisimmet ferry, previously made to the petitioners, by the city of Boston, by the agency of the mayor and aldermen.

To consider this question in its full extent, would be to consider the question of the petitioners' title, which, as a general question, is not now open ; but we think that this objection does not raise that question. Even if the city, by their authorized agents, had made a grant of a ferry or other franchise, claiming to be owners thereof, with express or implied covenants for an exclusive enjoyment of such franchise, this would not prohibit or restrain the mayor and aldermen from exercising the powers vested in them by statute, to license a ferry required by public convenience and necessity. Such authority is vested in them as trustees for the public, to be exercised for the public good, and cannot be restrained by the covenant of the city, though such covenant happens to be executed by the same agents. In such case, it is necessary to keep in view the distinction between the powers and functions of the mayor and aldermen, acting as agents for the city in its corporate capacity, capable of entering into contracts, and the same body as exercising powers vested in them by statute, in the unrestrained exercise of which the public have an interest. In the case supposed, if the city in its corporate capacity, was the legal owner and proprietor of an exclusive franchise, its grantees would hold it, notwithstanding any license to others, whether granted by the mayor and aldermen or any other tribunal ; if it was not the owner of such an exclusive franchise, though the city might have granted it with a covenant for quiet enjoyment, and might be responsible on such covenant to the grantees, still such covenant could not restrain the mayor and aldermen

from exercising their judgment, as agents and trustees for the public.

2. Another objection is, that the jurisdiction of the Court of Sessions did not extend to ferries over public navigable waters and arms of the sea.

The right to a ferry does not at all depend upon the right to, or property in the waters, over which it passes. It is a maxim upon this subject, that a right of ferry is a franchise consisting in the right to transport persons and carriages for hire, and therefore the property in the waters may be in one, and the right of ferry in another. This is said to be the case with ferries in the Thames, where the ferry in some places belongs to the archbishop of Canterbury, whilst the interest in the waters is in the mayor and aldermen of London.

But on general grounds, we think that this objection cannot be sustained. Whatever may be the theoretic view of the law, as to the property of public waters, it is very clear, that they are held for the use of the public, for all useful purposes. Ferrymen have the same common right to navigate these waters with their boats, as fishermen, coasters, shipmasters, with their boats and vessels, and the United States with her navies. The franchise of a ferry does not confer or enlarge, take away or impair the right of navigation. It is a franchise, conferring certain privileges, and imposing certain duties, not affecting the right of navigation, but presupposing its existence.

Ferries are as necessary over navigable waters as others; the public accommodation requires them; the general act on the subject, *St.* 1796, *c.* 42, is broad enough in its terms to extend to them; and there is nothing in the nature of the power and license granted, which does not render them as well applicable to navigable waters, as to other streams, lakes, or waters wherein the convenience of travel requires such an accommodation. And in this connexion it may be proper to mark the broad distinction between the authority to license a ferry, and that to build a bridge; inasmuch as the one does, and the other does not, obstruct navigation.

3. Some exception was made to the proceedings of the committee, to whom the subject was referred; but whatever these

proceedings were, they were merely preparatory to the action of the mayor and aldermen. It appears, that after the report was made, a hearing of the present petitioners was had before that board, after which the license was granted. We think therefore, that whether the committee agreed to the report or not, is wholly immaterial.

4. That the public convenience and necessity did not require such a ferry, that there were no inhabitants there, and no line of travel to be accommodated.

This is a question not open to the consideration of the Court, in this form of proceeding. Of the common convenience and necessity the mayor and aldermen were to judge, and the question here is as to the regularity of the proceedings. That there was no line of travel to be accommodated, depends on the same considerations. Where a new and convenient line of travel can be advantageously opened to the public, whether a ferry shall be licensed first, and highways afterwards opened to connect with it, or whether the ways on each side shall be first opened, is rather a question of expediency than of jurisdiction.

5. That a right of ferry has respect to the ownership of the soil, on both sides, and cannot exist without it.

Though there are some early *dicta* to this effect, it would be difficult to maintain that position in point of law. *Peter* v. *Kendall*, 6 Barn. & Cressw. 703. But the point is immaterial here, because it does not appear, that the persons licensed did not own the land on both sides.

6. That the license was void for its generality and uncertainty, in not defining more particularly the *termini*, in the old part of Boston, on one side, and Noddle's Island on the other. We think these proceedings cannot be considered absolutely void for uncertainty, so as to be set aside on this ground, on *certiorari*. This question would perhaps present itself in a very different aspect, should the party licensed bring an action for a disturbance, against any one undertaking to carry persons for hire, or should any person undertake to set up another ferry between the other part of Boston and Noddle's Island. But the latter question is less likely to arise, because the license which is the subject of the present inquiry, does

in terms reserve the right to grant licenses for other ferries, between Noddle's Island and the other part of Boston, as the mayor and aldermen may at any time hereafter think expedient.